**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS,<br><br>*Plaintiff*,<br><br>v.<br><br>T-MOBILE USA INC.,<br><br>*Defendant*. | Case No. ________________<br><br>Jury Trial Requested |

Plaintiff Cellco Partnership d/b/a Verizon Wireless ("Verizon"), by and through its attorneys, Venable LLP, brings this action for intentional false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and corresponding state law claims against Defendant T-Mobile USA Inc. ("T-Mobile") to enjoin T-Mobile's 'False Pricing Campaign'—a campaign launched in defiance of an industry self-regulatory body's recent recommendations to discontinue a similar deceptive claim—and alleges as follows:

## INTRODUCTION

1. This case challenges T-Mobile's "deception by design"—a nationwide advertising campaign that manufactures a mathematical fiction to lure customers away from Verizon. T-Mobile promises consumers over $1,000 in annual savings by comparing its own promotional rates against Verizon's standard prices while systematically mischaracterizing Verizon's actual service offerings. T-Mobile's savings calculator facilitates this deception by assigning arbitrary, inflated values to ancillary benefits, while charging Verizon phantom fees for services Verizon already provides. T-Mobile's reliance on faulty comparative pricing reflects a pattern of

deception, as it has doubled down on these tactics even after the National Advertising Division (NAD) recommended that T-Mobile discontinue these types of false cost savings claims. Because these deceptive claims cause irreparable harm to Verizon's brand and market position, Verizon seeks to enjoin T-Mobile's campaign.

2. T-Mobile intentionally builds its nationwide false advertising campaign on the false premise that consumers will "Save over $1,000/year vs. Verizon" because T-Mobile claims it "includes streaming, satellite, and more benefits the other guys leave out."

3. T-Mobile features these false claims in nationwide television commercials, in digital advertisements, and on T-Mobile's website. The campaign focuses on luring wireless services customers to switch to T-Mobile at a critical switching period from the "other carriers," namely Verizon and AT&T, by offering intentionally false and misleading cost savings claims ("The False Pricing Campaign").

4. The False Pricing Campaign rests on deceptive price comparisons and calculations that bake in a result by comparing T-Mobile's limited-time promotional pricing to Verizon's standard pricing, while ignoring Verizon's active promotions and mischaracterizing the value of optional benefits to inflate supposed "savings."

5. After the NAD and its appellate body, the National Advertising Review Board (NARB) repeatedly found in 2025 and 2026 that T-Mobile's similarly false price-savings claims were unsubstantiated and misleading—and directed T-Mobile to discontinue the claims—T-Mobile doubled down with substantially identical claims. Even worse, T-Mobile has now increased the purported savings but based this higher savings on similarly inflated discount calculations at-issue in the NAD and NARB proceedings.

6. The law prohibits advertisers from using deceptive calculations and evasive fine print to divert customers. T-Mobile's material misrepresentations, made in interstate commerce, already harm Verizon and consumers.

7. Verizon seeks injunctive relief and damages to stop and remedy this willfully false advertising under the Lanham Act and New York General Business Law.

8. Given the demonstrable falsity and deliberate deception used in connection with the False Pricing Campaign and given T-Mobile's repeated efforts to target Verizon with false and misleading claims about the relative pricing of its and Verizon's wireless services, immediate injunctive relief is essential.

## PARTIES

9. Plaintiff Cellco Partnership d/b/a Verizon Wireless is a Delaware corporation headquartered in New Jersey that conducts substantial business in New York, NY and in this judicial district, including operating a wireless network, maintaining offices, operating stores, directing advertising, and providing service.

10. Defendant T-Mobile USA Inc. is a Delaware corporation with its principal place of business in Bellevue, Washington.

## JURISDICTION

11. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Verizon alleges federal claims for false advertising under the Lanham Act, 15 U.S.C. § 1125. Under 28 U.S.C. § 1367, Verizon's remaining claims fall within this Court's supplemental jurisdiction because they arise out of the same nucleus of operative facts and form part of the same case or controversy as Plaintiff's federal claims.

12. This Court has personal jurisdiction over T-Mobile because it transacts business in New York, including by maintaining stores in New York where it sells access to its wireless network to consumers who reside in New York, by providing consumers who reside in New York with access to its wireless and other networks, by maintaining a website that is accessed by consumers who reside in New York, by shipping products to New York, and by advertising its products and services, including its False Pricing Campaign, to consumers who reside in New York. T-Mobile also has committed tortious acts within New York by falsely advertising to consumers in this state and Verizon's claims arise out of T-Mobile's tortious acts.

## VENUE

13. Venue is proper under 28 U.S.C. § 1391(b)(2) because T-Mobile is subject to personal jurisdiction in this judicial district, and a substantial part of the events giving rise to Verizon's claims arose in this district, including harm to Verizon and its customers.

14. T-Mobile's nationwide False Pricing Campaign is intended to reach and, upon information and belief, has reached consumers in this District. Additionally, T-Mobile also operates numerous stores at various physical locations throughout the Southern District of New York, which will likely profit or have already profited from T-Mobile's violation of state and federal law.

## FACTUAL ALLEGATIONS

### A. Verizon Leads the U.S. Wireless Market in Performance and Reliability

15. Verizon was recently named the leading US mobile network in seven national categories tracked by Ookla's RootMetrics State of the Mobile Union report for the second half of 2025. Verizon received the award for best overall network performance and first place in the network reliability category.

16. T-Mobile directly competes with Verizon for wireless customers. Most American consumers already receive wireless service from a Tier 1 service provider—Verizon, AT&T and T-Mobile—or from other established and emerging competitors.

17. Verizon, T-Mobile, and others compete vigorously to convince existing wireless customers to switch to their networks. Consequently, T-Mobile and Verizon market extensively to their existing customers, with the goal of convincing those customers to stay.

18. In selecting a carrier for a recurring monthly plan on auto pay, the price of the plan is a material consideration for consumers considering switching carriers.

19. Perceived cost savings on service plans or in the quality and value of a service provider's wireless network and ancillary services can give that service provider a significant competitive advantage over other wireless companies that can last for years.

## B. T-Mobile Has a Documented History of Deceptive Price-Savings Claims

20. Verizon has already successfully challenged T-Mobile's prior "Save 20%" price-savings campaign. The NAD found T-Mobile's 20% savings claim was unsubstantiated and misleading because T-Mobile incorporated the value of optional streaming benefits into a "plan savings" comparison, which consumers would reasonably understand to be a comparison of the price of a T-Mobile plan to the price of a Verizon plan.

21. The NAD recommended that T-Mobile discontinue its 20% savings claims and remedy the qualifying language — "plus optional streaming services"—that failed to disclaim the falsity that "similar streaming services" were mandatory plan costs.

22. The NAD also found prior claims misleading because T-Mobile omitted the requirement that customers sign up for three lines to obtain the "20% savings" advertised. After T-Mobile added a disclaimer, the NAD found it was inconspicuous and inadequate because it

failed to properly inform consumers that any savings were limited to customers signing up for three lines.

23. After complaints that T-Mobile persisted, the NARB opened a compliance inquiry. NARB concluded that T-Mobile's qualifying language still conveyed a misleading comparison of plan costs alone and recommended that T-Mobile discontinue the claims.

24. As recently as January 2026, NARB found that T-Mobile's revised disclaimers still failed to clarify that claimed "savings" included bundled streaming services, not just plan costs, and that T-Mobile had not in good faith sought to conform its advertising to the NAD's and NARB's decisions.

25. Rather than comply, T-Mobile launched substantially identical price-savings claims in a new mass-market campaign. The repetition of the same deception—despite repeated adverse NAD/NARB rulings—demonstrates willful intent and deception by design.

## C. T-Mobile's "Better Value" Uses Mathematical Fiction to Lure Verizon Customers

### *i. The $1,000 Savings Lie: T-Mobile's Savings Calculator Manufactures False Price Comparisons by Mischaracterizing Optional Benefits*

26. T-Mobile promotes its False Pricing Campaign through TV Ads, including the "Druski Ad" (available at https://www.ispot.tv/ad/gw_X/t-mobile-better-value-keep-and-switch-featuring-druski), and on the T-Mobile website at https://www.tmobile.com/offers/family-plan-deal (the "T-Mobile Website Ad"). Both falsely claim that families can "save over $1,000/year vs. Verizon" (the "$1000 Savings Lie").







27. The Calculator used on the T-Mobile Website Ad to support these purported savings is facially and foundationally flawed. It misrepresents the nature and pricing of optional bundled streaming benefits and fails to account for the value of the additional streaming benefits

that a Verizon customer would receive in the hypothetical that T-Mobile created and that are not included in T-Mobile's Better Value Plan, as well as satellite benefits already available to Verizon's customers at no cost.

- 3 +

| | T-Mobile<br>Better Value | | Verizon<br>Unlimited Ultimate | | AT&T<br>Unlimited Premium® PL | |
|---|---|---|---|---|---|---|
| 3 line(s) w/ AutoPay | $140/mo. | 3 line(s) w/ AutoPay | $195/mo. | 3 line(s) w/ AutoPay | $182.97/mo. | |
| Netflix | Included | Netflix | $10.00/mo.<br>Optional Netflix & Max (With Ads) bundle | Netflix | $7.99/mo.<br>Sold separately | |
| Apple TV | $3.00/mo. | Apple TV | $15.00/mo.<br>Optional Apple One bundle | Apple TV | $12.99/mo.<br>Sold separately | |
| Hulu | Included | Hulu | $10.00/mo.<br>Optional Disney+, Hulu, ESPN+ (With Ads) bundle | Hulu | $11.99/mo.<br>Sold separately | |
| T-Satellite | Included | T-Satellite | $30.00/mo.<br>Add T-Satellite—auto connects, powers your apps | T-Satellite | $30.00/mo.<br>Add T-Satellite—auto connects, powers your apps | |
| Price Guarantee | 5 Years | Price Guarantee | 3 Years | Price Guarantee | Not Included | |
| Estimated total | $143.00/mo. | Estimated total | $260.00/mo.<br>Save about 45% with T-Mobile | Estimated total | $245.94/mo.<br>Save about 42% with T-Mobile | |

Cancel anytime. Plan prices shown include AutoPay and paper-free billing discounts; pricing excludes taxes, surcharges, and fees, which vary by carrier and location. Savings vs. comparable plans at AT&T and Verizon plus the costs of optional benefits; plan features and taxes & fees vary. Qualifying credit required. AutoPay discount requires debit or bank acct.; otherwise $5 more/line/mo. T-Satellite with compatible device in most outdoor areas in the U.S. where you can find the sky. Included with Experience Beyond or Better Value plan; or $10/mo.; auto renews monthly. Review T-Mobile.com/plans for full T-Mobile pricing and plan details.

28. Using T-Mobile's own cited monthly pricing figures— $140/month for three lines on T-Mobile's Better Value plan versus $195/month for three lines on Verizon's Unlimited Ultimate plan—the plan-to-plan delta is $55/month, or $660/year. This is well below the claimed savings of "over $1,000/year."

29. To manufacture the remaining "savings," the Calculator imputes add-on costs to Verizon for optional streaming services while understating or omitting the added value those same optional services provide to Verizon customers.

30. Regarding Netflix, Verizon customers who elect the optional Netflix offering provided by Verizon receive Netflix and HBO Max together for $10/month. The Calculator inflates this cost for Verizon and fails to add the cost of HBO Max to T-Mobile's side for an apples-to-apples comparison.

31. Regarding Hulu, Verizon customers who elect Hulu receive Hulu, Disney+, and ESPN+ (all included in the optional Disney Bundle offered by Verizon) for $10/month. The Calculator fails to add the costs of Disney+ and ESPN+ to T-Mobile's side.

32. Regarding Apple TV+, Verizon customers who elect Apple TV+ receive Apple TV+, Apple Music, Apple Arcade, and iCloud+ storage (all included in the optional Apple One bundle offered by Verizon) for $15/month. Again, the Calculator does not account for the added value of each component of the Apple One bundle not offered under the Better Value plan on T-Mobile's side.

33. By mischaracterizing optional bundles and failing to credit like-for-like optional value, the Calculator inflates the supposed annual "savings" beyond what the plan rates themselves can support.

ii. *T-Mobile Skews Its Data by Comparing Promotional Rates to Verizon's Standard Pricing*

34. The Calculator further skews the comparison by pairing T-Mobile's limited-time promotional price against Verizon's nonpromotional price.

35. In doing so, the Calculator ignores Verizon's current promotional pricing—for example, promotional pricing that reduces the monthly cost of Verizon's Unlimited Ultimate plan for three lines from $195 to $175.

36. Comparing a T-Mobile promotional rate to a Verizon nonpromotional rate—and ignoring Verizon's promotions—artificially inflates the purported "savings" by at least $20/month on this feature alone. This is not an oversight; it is deception by design.

37. The promotional plan-to-plan delta is $35/month, or $420/year, even further under T-Mobile's falsely promised "over $1,000/year " savings.

*iii. T-Mobile Falsely Claims that Verizon Lacks Satellite Features, Then Assigns Those Features an Absurd $30 Monthly Value*

38. T-Mobile misleadingly claims it "includes streaming, satellite, and more benefits the other guys leave out," implying that Verizon fails to provide satellite connectivity. T-Mobile then assigns a monthly $30 value to this service on Verizon's side of the ledger. This is deception by design.

39. First, most Verizon customers already receive comparable satellite connectivity at no additional cost through established partners, including Apple and Skylo. T-Mobile's claim that Verizon "leaves out" this benefit is factually false. The Calculator imputes a $30/month fee to Verizon customers for a service most of them already receive.

40. Second, T-Mobile's $30 monthly valuation is for an ancillary benefit that the vast majority of consumers would not pay for as a standalone monthly subscription.

41. Consequently, Consumers are misled in three ways: first, by the false suggestion that Verizon lacks comparable satellite benefits; second, by the Calculator's failure to account for the existing satellite services already provided to most Verizon customers; and third, by the baseless assertion that a niche and seldom-necessary service should be attributed to all customers at $360 per year.

*iv. The Druski Ad Intentionally Hides the Three-Line Service Requirement*

42. The Druski Ad similarly promotes the $1,000 Savings Lie; however, it fails to include an audible disclosure and does not clearly disclaim, whether through visible or audible explanation, that to obtain the cost savings, customers must sign up for three phone lines.

43. The Druski Ad therefore fails to inform consumers that the $1,000 Savings Lie is contingent on purchasing three lines of service at a specific tier and promotional price.

44. T-Mobile's failure to provide clear and conspicuous information for consumers contradicts the message of the $1000 Savings Lie, which broadly promises over $1,000 savings without disclosing the limitations and requirements of those savings.

45. T-Mobile's intentional omission of a clear disclosure concerning the three-line requirement in the Druski Ad is willful and follows its deception-by-design playbook. The NAD previously determined on May 19, 2025, that T-Mobile's disclosures failed to clearly inform consumers that its prior "20% Savings" claim was contingent on purchasing three lines, leading the NAD to recommend T-Mobile discontinue the claims.

**D. T-Mobile's False Pricing Campaign Causes Verizon Irreparable Harm**

46. T-Mobile's false advertisements and deceptive trade practices severely and irreparably injure Verizon.

47. Price, perceived savings, and included benefits are material considerations that drive switching decisions in the wireless market.

48. T-Mobile's false and misleading claims are designed to induce Verizon subscribers to switch providers now based on an artificially inflated promise of "over $1,000/year" in savings and a false narrative about "left out" benefits.

49. Once a consumer switches carriers, the harm to Verizon is immediate and often irreversible, extending to cross-sold services and long-term customer relationships.

50. T-Mobile's false advertising harms both competition and consumers by distorting the marketplace and causing consumers to make purchasing decisions on false premises.

51. Customer acquisition and retention of existing wireless services plan subscribers are critical to Verizon's business. T-Mobile's conduct unfairly compromises both.

52. T-Mobile's false and deceptive conduct also harms consumers. T-Mobile's false claims are likely to induce consumers to make purchasing decisions and potentially incur higher costs for benefits not offered under T-Mobile's Better Value plan.

## CLAIMS

### COUNT I

### (False Advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a))

53. Verizon incorporates all factual allegations made above as if fully set forth herein.

54. T-Mobile, on or in connection with goods or services used in commerce made false descriptions or representations of fact as to the nature, characteristics or qualities of T-Mobile's and Verizon's goods, service or commercial activities in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

55. T-Mobile's false descriptions or representations of fact were made in commercial advertising in a manner material to the public's decision to purchase such products.

56. Verizon and T-Mobile directly compete in the relevant wireless services market, and T-Mobile's false advertising claims have a tendency to deceive a substantial number of consumers in that market.

57. T-Mobile's false and misleading statements about its own and Verizon's goods, services, and commercial activities have damaged Verizon's goodwill and reputation and impacts Verizon's market position.

58. As a result of T-Mobile's willful conduct Verizon has suffered irreparable harm to its goodwill, reputation and market position, for which it has no adequate remedy at law and will continue to suffer irreparable injury unless and until T-Mobile's dissemination is temporarily, preliminarily and/or permanently enjoined by this Court pursuant to 15. U.S.C. Section 1116.

59. In addition, T-Mobile will unjustly reap profits from sales based on consumer reliance on the advertising campaign's false and deceptive comparison of the nature, qualities and characteristics of the parties' goods and services.

60. Verizon is entitled to recover under 15 U.S.C. § 1117 its actual damages in an amount to be determined at trial, enhanced damages and a finding that this is an exceptional case, and all costs and attorneys' fees incurred by Verizon in this action.

**COUNT II**

**(Deceptive and Unfair Trade Practices under the New York Business Law)**

61. Verizon incorporates all factual allegations made above as if fully set forth herein.

62. T-Mobile's willful and intentional false advertising and deceptive trade practices were directed towards consumers with the aim of influencing consumers to make purchasing and product decisions based on the false advertising and deceptive trade practices.

63. By comparing its wireless services favorably to Verizon's in an intentionally and willfully false and deceptive manner, T-Mobile made false claims that were material to the consuming public's purchasing and product decisions.

64. T-Mobile's willful and intentional false and deceptive advertising campaign has caused and will cause harm to Verizon and to the consuming public by deceiving them as to the price of wireless services.

65. The foregoing acts of T-Mobile constitute deceptive trade practices and false advertising under New York General Business Law Sections 349 and 350.

66. Verizon has suffered and will continue to suffer as a result of T-Mobile's false advertising and deceptive trade practices in the form of lost customers and lost sales, damage to its reputation and market position, and erosion of its goodwill.

**COUNT III**

**(Common Law Unfair Competition)**

67. Verizon incorporates all factual allegations made above as if fully set forth herein.

68. T-Mobile has engaged in unfair competition by making false and deceptive statements about T-Mobile's and Verizon's wireless services plans thereby damaging Verizon's ability to compete fairly for market share and customer loyalty and retention based on truthful advertising.

69. T-Mobile acted intentionally and in bad faith in disseminating its false and misleading advertising campaign making claims about Verizon's monthly service plans that it knew to be materially false and deceptive.

70. The foregoing acts of T-Mobile constitute intentional false advertising and unfair competition against Verizon in violation of the common law of the State of New York.

**PRAYER FOR RELIEF**

WHEREFORE, Verizon demands judgment against T-Mobile for the following relief:

1. A judgment declaring that T-Mobile has:

a. Violated Section 43(a) of the Lanham Act 15 U.S.C. Section 1125 (a);

b. Engaged in deceptive trade practices and false advertising in violation of Sections 349 and 350 of the New York General Business Law; and

c. Engaged in unfair competition in violation of the common law of the State of New York.

2. Temporary, preliminary and/or permanent injunctive relief enjoining T-Mobile its agents, servants, officers, employees and all those acting under its control and in concert with it or on its behalf from disseminating the false and deceptive advertising claims as set forth herein in any form or medium pursuant to 15 U.S.C. Section 1116.

3. An Order directing T-Mobile to account to Verizon for all gains, profits and advantages obtained by it as a result of the false advertising campaign and unfair competition and awarding Verizon all restitution in the amount of all such unlawful gains.

4. An Order awarding to Verizon all actual damages resulting from T-Mobile's unlawful conduct in an amount to be determined at trial and increased and enhanced in this Court's discretion pursuant to 15 U.S.C Section 1117.

5. An Order awarding profits attributable to T-Mobile's unlawful conduct in an amount to be determined at trial and trebled under 15 U.S.C Section 1117, and a finding that this is an exceptional case due to the intentional nature of T-Mobile's false advertising and awarding attorneys' fees, costs and expenses to Verizon, in this Court's discretion.

6. An Order requiring T-Mobile to pay Verizon's costs, attorneys' fees and expenses and damages under New York General Business Law Sections 349 and 350.

7. Awarding such other and further relief as this Court deems just and proper.

**Jury Trial Demanded**

Verizon hereby demands, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, a trial by jury in this action.

Dated: February 4, 2026

Respectfully submitted,

/s/ *Marcella Ballard*

Marcella Ballard
**VENABLE LLP**
151 West 42nd Street, 49th Floor
New York, New York 10036
Tel: (212) 370-6289
Fax: (212) 307-5598
MBallard@venable.com

Roger A. Colaizzi
**VENABLE LLP**
600 Massachusetts Ave. NW
Washington, DC 20001
Tel: (202) 344-8051
Fax: (202) 344-8300
RColaizzi@Venable.com

*Attorneys for Plaintiff*
Cellco Partnership d/b/a Verizon Wireless