## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

CELLCO PARTNERSHIP d/b/a VERIZON
WIRELESS,

                   Plaintiff,

           - against -

T-MOBILE USA INC.,

                  Defendant.

No. 1:26-cv-00972 (LAK)

**Jury Trial Demanded**

## DEFENDANT T-MOBILE USA, INC.'S ANSWER AND COUNTERCLAIMS

Defendant T-Mobile USA, Inc. ("T-Mobile"), by its attorneys Herbert Smith Freehills Kramer (US) LLP, answers the Complaint of Cellco Partnership d/b/a Verizon Wireless ("Verizon") as set forth below. Any allegation of the Complaint, or part of such allegation, that is not specifically admitted below is denied. T-Mobile further denies any allegations in headings and/or unnumbered paragraphs of the Complaint.

## INTRODUCTION

Verizon alleges that T-Mobile's truthful, substantiated savings claims unfairly distort competition, while running a nationwide "Better Deal" campaign of its own that falsely promises lower prices to T-Mobile customers who switch to Verizon. T-Mobile denies Verizon's allegations in full and, through these counterclaims, seeks to hold Verizon accountable for that disparity, to stop Verizon from continuing to mislead consumers through its false "Better Deal" campaign, and to recover damages for Verizon's deceptive conduct.

## ANSWER

1.    T-Mobile denies the allegations in paragraph 1 of the Complaint and refers to the decisions of the National Advertising Division ("NAD") referenced therein, which can be read and interpreted on their own terms.

2.    T-Mobile denies the allegations in paragraph 2 of the Complaint, except that T-Mobile admits to using the taglines "Save over $1,000/year vs. Verizon" and promoting its plans as "includ[ing] streaming, satellite, and more benefits the other guys leave out."

3.    T-Mobile denies the allegations of paragraph 3 of the Complaint, except that T-Mobile admits to running television commercials, digital advertisements, and website promotions featuring the taglines "Save over $1,000/year vs. Verizon" and "includes streaming, satellite, and more benefits the other guys leave out,"

4.    T-Mobile denies the allegations of paragraph 4 of the Complaint.

5.    T-Mobile denies the allegations in paragraph 5 of the Complaint and refers to the NAD and National Advertising Review Board ("NARB") decisions referenced therein, which can be read and interpreted on their own terms.

6.    The allegations in paragraph 6 of the Complaint state a legal conclusion to which no response is required. To the extent that this paragraph contains factual allegations that require a response, T-Mobile denies such allegations.

7.    The allegations in paragraph 7 of the Complaint state a legal conclusion to which no response is required. To the extent this paragraph contains factual allegations that require a response, T-Mobile denies such allegations. T-Mobile lacks knowledge or information sufficient to form a belief as to the truth or falsity of allegations relating to why Verizon has brought this action and the relief Verizon seeks and therefore denies those allegations.

8.      The allegations in paragraph 8 of the Complaint state a legal conclusion to which no response is required. To the extent this paragraph contains factual allegations that require a response, T-Mobile denies such allegations.

## PARTIES

9.      T-Mobile admits the allegations in paragraph 9 of the Complaint on information and belief.

10.     T-Mobile admits the allegations in paragraph 10 of the Complaint.

## JURISDICTION

11.     The allegations in paragraph 11 of the Complaint state a legal conclusion to which no response is required.

12.     Paragraph 12 of the Complaint states legal conclusions to which no response is required. To the extent this paragraph contains factual allegations that require a response, T-Mobile denies such allegations except admits that it transacts business in the State of New York, maintains stores in New York, and provides services and products to consumers who reside in New York.

## VENUE

13.     Paragraph 13 of the Complaint states a legal conclusion to which no response is required. To the extent that this paragraph contains factual allegations that require a response, T-Mobile denies such allegations.

14.     T-Mobile denies the allegations in paragraph 14 of the Complaint, except admits that T-Mobile operates storefronts in the Southern District of New York and advertises to consumers in the District.

## FACTUAL ALLEGATIONS

15.     T-Mobile lacks knowledge or information sufficient to form a belief as to the truth

or falsity of the allegations in paragraph 15 of the Complaint and therefore denies the same.

16.    T-Mobile admits the allegations in paragraph 16 of the Complaint.

17.    T-Mobile lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 17 of the Complaint and therefore denies the same, except admits that T-Mobile competes to convince wireless customers to switch to T-Mobile and markets to its existing customers to convince those customers to stay with T-Mobile.

18.    T-Mobile admits the allegations in paragraph 18 of the Complaint.

19.    T-Mobile lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 19 of the Complaint and therefore denies the same, except admits that cost and value are material considerations for consumers and affect service providers' competitive advantage.

20.    T-Mobile denies the allegations in paragraph 20 of the Complaint insofar as they contain Plaintiff's characterizations of NAD decisions, which are written documents that can be read and analyzed by their own terms.

21.    T-Mobile denies the allegations in paragraph 21 of the Complaint insofar as they contain Plaintiff's characterizations of NAD decisions, which are written documents that can be read and analyzed by their own terms.

22.    T-Mobile denies the allegations in paragraph 22 of the Complaint insofar as they contain Plaintiff's characterizations of NAD decisions, which are written documents that can be read and analyzed by their own terms.

23.    T-Mobile denies the allegations in paragraph 23 of the Complaint insofar as they contain Plaintiff's characterizations of NARB decisions, which are written documents that can be read and analyzed by their own terms.

24.     T-Mobile denies the allegations in paragraph 24 of the Complaint insofar as they contain Plaintiff's characterizations of NARB decisions, which are written documents that can be read and analyzed by their own terms.

25.     T-Mobile denies the allegations in paragraph 25 of the Complaint.

26.     T-Mobile denies the allegations in paragraph 26 of the Complaint, except admits that it ran the "Druski Ad" and the "T-Mobile Website Ad," which included the tagline "save over $1,000/year vs. Verizon."

27.     T-Mobile denies the allegations in paragraph 27 of the Complaint.

28.     T-Mobile denies the allegations in paragraph 28 of the Complaint, except admits that the difference between $140/month and $195/month is $55/month, or $660/year.

29.     T-Mobile denies the allegations in paragraph 29 of the Complaint.

30.     T-Mobile denies the allegations in paragraph 30 of the Complaint. T-Mobile lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations relating to Verizon's Netflix offerings and therefore denies the same.

31.     T-Mobile denies the allegations in paragraph 31 of the Complaint.  T-Mobile lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations relating to Verizon's Hulu, Disney+, and ESPN+ offerings and therefore denies the same.

32.     T-Mobile denies the allegations in paragraph 32 of the Complaint. T-Mobile lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations relating to Verizon's Apple offerings and therefore denies the same.

33.     T-Mobile denies the allegations in paragraph 33 of the Complaint.

34.     T-Mobile denies the allegations in paragraph 34 of the Complaint.

35.     T-Mobile denies the allegations in paragraph 35 of the Complaint. T-Mobile lacks

knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Verizon's current promotional pricing and therefore denies the same.

36.    T-Mobile denies the allegations in paragraph 36 of the Complaint. T-Mobile lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Verizon's current promotional pricing and therefore denies the same.

37.    T-Mobile denies the allegations in paragraph 37 of the Complaint. T-Mobile lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Verizon's current promotional pricing and therefore denies the same.

38.    T-Mobile denies the allegations in paragraph 38 of the Complaint, except admits that its advertising states its plan "includes streaming, satellite, and more benefits the other guys leave out."

39.    T-Mobile denies the allegations in paragraph 39 of the Complaint.

40.    T-Mobile denies the allegations in paragraph 40 of the Complaint.

41.    T-Mobile denies the allegations in paragraph 41 of the Complaint.

42.    T-Mobile denies the allegations in paragraph 42 of the Complaint.

43.    T-Mobile denies the allegations in paragraph 43 of the Complaint.

44.    T-Mobile denies the allegations in paragraph 44 of the Complaint.

45.    T-Mobile denies the allegations in paragraph 45 of the Complaint, and refers to the NAD decisions referenced therein, which are written documents that can be read and analyzed by their own terms.

46.    T-Mobile denies the allegations in paragraph 46 of the Complaint.

47.    T-Mobile lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 47 of the Complaint and therefore denies the same, except

admits that cost and value are material considerations that affect consumers' decisions in choosing their wireless carriers.

48.     T-Mobile denies the allegations in paragraph 48 of the Complaint.

49.     T-Mobile denies the allegations in paragraph 49 of the Complaint.

50.     T-Mobile denies the allegations in paragraph 50 of the Complaint.

51.     T-Mobile denies the allegations in paragraph 51 of the Complaint.  T-Mobile lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations pertaining to Verizon's business and therefore denies such allegations.

52.     T-Mobile denies the allegations in paragraph 52 of the Complaint.

## CLAIMS

### COUNT I

**(False Advertising in Violation of the Lanham Act, 15 U.S.C. § 1125(a))**

53.     T-Mobile incorporates by reference its responses to paragraphs 1-52 of the Complaint, as if fully set forth herein.

54.     The allegations in paragraph 54 of the Complaint state a legal conclusion to which no response is required. To the extent a response is required, T-Mobile denies the allegations.

55.     T-Mobile denies the allegations in paragraph 55 of the Complaint.

56.     T-Mobile denies the allegations in paragraph 56 of the Complaint, except admits that T-Mobile competes with Verizon in the wireless services market.

57.     T-Mobile denies the allegations in paragraph 57 of the Complaint.

58.     T-Mobile denies the allegations in paragraph 58 of the Complaint.

59.     T-Mobile denies the allegations in paragraph 59 of the Complaint.

60.     The allegations in paragraph 60 of the Complaint state a legal conclusion to which no response is required. To the extent a response is required, T-Mobile denies such allegations.

## COUNT II

### (Deceptive and Unfair Trade Practices under the New York Business Law)

61.     T-Mobile incorporates by reference its responses to paragraphs 1-52 of the Complaint, as if fully set forth herein.

62.     T-Mobile denies the allegations in paragraph 62 of the Complaint.

63.     T-Mobile denies the allegations in paragraph 63 of the Complaint.

64.     T-Mobile denies the allegations in paragraph 64 of the Complaint.

65.     The allegations in paragraph 65 of the Complaint state a legal conclusion to which no response is required. To the extent a response is required, T-Mobile denies such allegations.

66.     T-Mobile denies the allegations in paragraph 66 of the Complaint.

## COUNT III

### (Common Law Unfair Competition)

67.     T-Mobile incorporates by reference its responses to paragraphs 1-52 of the Complaint, as if fully set forth herein.

68.     T-Mobile denies the allegations in paragraph 68 of the Complaint.

69.     T-Mobile denies the allegations in paragraph 69 of the Complaint.

70.     The allegations in paragraph 70 of the Complaint state a legal conclusion to which no response is required. To the extent a response is required, T-Mobile denies such allegations.

### **PRAYER FOR RELIEF**

T-Mobile denies that Verizon is entitled to judgment from this Court in its favor or any relief of any kind whatsoever.

## T-MOBILE'S AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
#### (Failure to State a Claim)

1.     Verizon's Complaint, on one or more claims for relief set forth therein, fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE
#### (Waiver, Estoppel, Laches)

2.     Verizon's claims are barred by waiver, estoppel, and laches.

### THIRD AFFIRMATIVE DEFENSE
#### (Unclean Hands)

3.     Verizon is barred from equitable relief under the doctrine of unclean hands because Verizon seeks equitable relief while having recently engaged in the same type of conduct that is the subject of its Complaint that it now contends is improper.

4.     By early 2025, Verizon advertised its Unlimited Ultimate plan as a means to save "vs. T-Mobile or AT&T." For example, Verizon's "Advice" commercial, first aired March 8, 2025, promotes Unlimited Ultimate with the headline "Save up to $420/yr. vs T-Mobile or AT&T," while small-print text discloses that the comparison assumes both adding optional streaming services and trading in a "select old, broken phone" for a new 5G device:



5.      At the same time, Verizon supported its claims of supposed savings over T-Mobile and AT&T with a calculator on its "Switch to Verizon" webpage, depicted here as of February 28, 2025:



6.      Verizon's savings calculator is directly comparable to the T-Mobile calculator that is the subject of the Complaint, featuring many of the same elements that Verizon now contends are improper in T-Mobile's savings calculator.

7.      Verizon's calculator compares the top premium plans across carriers, but it does not meaningfully credit T-Mobile's included streaming services. When no streaming service bundle is selected from the calculator's toggles, Verizon's calculator is silent as to the three streaming services that T-Mobile then included for free—Netflix, Hulu, and Apple TV.

8.      When the Disney+ and AppleOne bundles are selected, Verizon's calculator places the full cost of those bundles—as if purchased directly from the streamers—onto T-Mobile's column, without deducting any amount for the individual Hulu and Apple TV services T-Mobile already includes at no or little additional charge.

9.     Unlike T-Mobile's calculator, which explains that prices shown in Verizon's column are for streaming bundles, Verizon's calculator provides no textual explanation of T-Mobile's comparable included and/or steeply discounted streaming benefits. Reference to those benefits is consigned to the end of a dense, small-print block of disclosures below its calculator. Some details are entirely invisible unless a consumer clicks a button to expand a "compare details" section.

10.     The second line item in Verizon's calculator was for the "Latest 5G phone," and it tags T-Mobile with $28/line. This "perk" was static and could not be removed from Verizon's calculator. Verizon buried in remote disclosures below its calculator the key explanation that this relative savings advantage applied only in a narrow scenario: where a customer sought a trade-in for an old model iPhone that was damaged and/or not able to power on and stay on. Yet, that narrow scenario is the driver of savings at three and four lines. Removal of the cost assigned to T-Mobile in the device trade-in comparison would make plain that consumers with three lines would save more with T-Mobile, not Verizon.

11.     Verizon continued using this calculator to support its presently running "Better Deal" campaign launched in October 2025 that is the subject of T-Mobile's Counterclaim below. But by that time, Verizon had modified the calculator headline, further obscuring from consumers the fact that the calculator was designed to reflect only the narrow old and broken iPhone trade-in situation. Instead of "Save more vs. T-Mobile or AT&T [w]hen you trade in a select old, broken phone," the calculator headline—depicted below as of January 7, 2026—now encouraged consumers to "Do the math and see for yourself.  Explore our plans, perks, services and devices to see how much you could save compared to T-Mobile and AT&T":



12. Shortly before filing this lawsuit, Verizon quietly removed its calculator from its Switch to Verizon webpage.

13. Because Verizon's own comparative advertising has relied and continues to rely on headline savings claims, ancillary benefits, and disclosures that are materially indistinguishable from the features it now attacks in T-Mobile's campaign, Verizon's conduct is directly related to the equitable relief it seeks and barred by its unclean hands.

### FOURTH AFFIRMATIVE DEFENSE
### (No Damages)

14. Verizon's claims are barred, in whole or in part, because Plaintiff has not incurred any damages.

### FIFTH AFFIRMATIVE DEFENSE
### (Failure to Mitigate)

15. Verizon's claims are barred, in whole or in part, because to the extent Plaintiff has suffered any damages, Plaintiff failed to mitigate those damages.

### SIXTH AFFIRMATIVE DEFENSE
### (Unjust Enrichment)

16. Verizon's claims are barred, in whole or in part, because relief to Plaintiff would result in unjust enrichment to Plaintiff.

## T-MOBILE'S COUNTERCLAIMS

T-Mobile, by its attorneys Herbert Smith Freehills Kramer (US) LLP, as and for its Counterclaims against Verizon, alleges as follows:

## NATURE OF THE ACTION

1.      To dispel its reputation as a more expensive carrier, Verizon is running a nationwide "Better Deal" campaign—spanning television, digital, influencer, billboards, and in store promotions—that invites T-Mobile and other customers to bring a qualifying bill to Verizon with the promise that Verizon will offer them a lower-priced comparable plan (the "Better Deal Campaign"). Verizon's claim is false and misleading. As documented by complaints on independent consumer forums and even Verizon's own social media platforms, many consumers who accept Verizon's invitation are told that Verizon cannot beat—or even match—their current price, and instead those customers would pay *more* for comparable products and services at Verizon. The Better Deal Campaign is a classic "bait and switch" by which Verizon lures many consumers through the door with a false promise of savings and then tries to upsell them on more expensive products and services.

2.      T Mobile brings these counterclaims under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and for deceptive acts and practices and false advertising under N.Y. Gen. Bus. Law §§ 349 and 350 to stop Verizon from continuing to deceive consumers through its Better Deal Campaign and to recover damages for the harm Verizon has caused to T-Mobile and to consumers.

## PARTIES

3.      T-Mobile is a Delaware corporation with its principal place of business in Bellevue, Washington.

4.       Verizon is a Delaware corporation with its principal place of business in New

Jersey. Verizon conducts substantial business in New York, NY and in this judicial district, including operating a wireless network, maintaining offices, operating stores, directing advertising, and providing service.

## JURISDICTION

5.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because T-Mobile alleges federal claims for false advertising under the Lanham Act, 15 U.S.C. § 1125. T-Mobile's remaining claims fall within this Court's supplemental jurisdiction because they arise out of the same nucleus of operative facts and form part of the same case or controversy as T-Mobile's federal claims. 28 U.S.C. § 1367.

6.     This Court has personal jurisdiction over Verizon because it does business and sells and advertises its products and services in New York. Verizon committed tortious acts within New York by falsely advertising to consumers in this state, and T-Mobile's claims arise out of Verizon's tortious acts. In addition, in filing the Complaint, Verizon has submitted to the jurisdiction of the Court.

## VENUE

7.     Venue is proper under 28 U.S.C. § 1391(b)(2) because Verizon is subject to personal jurisdiction in this judicial district, and a substantial part of the events giving rise to T-Mobile's claims arose in this district, including advertising directed to residents of this district and harm to T-Mobile and its customers occurring in this district.

8.     Verizon's nationwide Better Deal Campaign is intended to reach and has reached consumers in this District. Additionally, Verizon operates numerous stores at various physical locations throughout the Southern District of New York, which will likely profit or have already profited from Verizon's violation of state and federal law.

9.      Venue is also proper because Verizon has sought the benefit of this forum for this litigation.

**FACTUAL ALLEGATIONS**

10.      On or about October 1, 2025, Verizon launched its Better Deal Campaign to help counter a marketplace perception that Verizon is more expensive than competitors like T-Mobile. The Better Deal Campaign includes a series of television commercials, digital advertisements, social media posts, and public ads on billboards and digital screens, all of which convey that when T-Mobile or AT&T customers bring a qualifying bill to Verizon, they will be provided with a less expensive comparable plan.

11.      From the launch of its Better Deal Campaign through today, Verizon's Switch to Verizon webpage (https://www.verizon.com/switch-to-verizon/) has featured a headline banner featuring the claim "Bring in your bill from AT&T or T-Mobile.  We'll give you a better deal." alongside the additional claims "The best network is a better deal," and "Save when you switch to Verizon today."



12.      When website visitors hover over the information icon following the "Save when you switch to Verizon today" claim, a popup text box states: "Bring your bill: To qualify, must provide a postpaid consumer mobile bill from T-Mobile or AT&T, dated within the past 45 days; bill must be in the same name as the person redeeming the deal. Add'l terms apply."



13.     Verizon also presented a savings calculator as part of its Better Deal Campaign—which was live on its website until shortly before Verizon filed its Complaint—and which bore the headline, "Do the math and see for yourself.  Explore our plans, perks, services and devices to see how much you could save compared to T-Mobile and AT&T."



14.     As part of its Better Deal Campaign, Verizon touts on billboards in New York and elsewhere around the country, "Bring in your T-Mobile or AT&T bill for a better deal."

 

15.    In a video that Verizon posted to its YouTube channel titled, "A Better Deal"—which presently has over 70 million views—an informercial-style host holds up a tattered "AT&T or T-Mobile Bill" that he crumples as he says, "Verizon will take your current AT&T or T-Mobile bill and give you an even better deal."



He then shouts, "If you thought Verizon was expensive, think again!" while punching away a graphic that says, "EXPENSIVE?"



16.     Verizon has paid influencers to tout its Better Deal Campaign. In one example, influencer Janneh Konneh posted a video titled "How to Save Money in New York City." She captioned her post, "#VerizonPartner NYC is expensive, but making the switch to @verizon made a big difference!" The video shows her visiting a Verizon store while a voiceover explains that Verizon is offering a "better deal" to T-Mobile and AT&T customers who bring in their bills." She states, "I love that I can lock in the low price of my mobile plan for 3 years," and later, "so I'm getting better service and I'm saving money."

17.     From the launch of its Better Deal Campaign through today, Verizon has aired a series of commercials depicting consumers entering various businesses wielding the bill they paid for a subpar product or service and expecting the business to provide a "better deal" for a new and improved product or service.  When a befuddled or peeved sales associate retorts that businesses do not operate that way, the consumer responds with some variation of: "Well, at Verizon it is. Anyone can bring their AT&T or T-Mobile bill and they'll give you a better deal."  The sales associate typically responds that Verizon is "expensive" or "pricey," and the customer responds, "No. Better deal. Best 5G network." Frustrated by not receiving the better deal they have demanded, the consumer exits with a parting shot, "You're not as cool as Verizon!"

18.     Through these and other advertising collateral in its Better Deal Campaign, Verizon literally, or by necessary implication claims that T-Mobile and AT&T customers who bring in a bill from their current carrier will pay less for a comparable plan with Verizon. The Better Deal campaign repeatedly invites T-Mobile and AT&T customers to "bring in your bill" and that Verizon will "give you a better Deal" accompanied by additional words and imagery emphasizing cost savings.  These include billboards featuring founding fathers on $1, $5, and $100 bills reacting in astonishment at Verizon's offer; website banners touting "save when you switch"; influencer posts touting "How to Save Money in New York City"; and television commercials and online videos focused on dispelling consumer impression that Verizon is "expensive" or "pricey."

19.     At minimum, the net impression of the Better Deal Campaign implies that Verizon will offer a lower priced alternative plan to all T-Mobile and AT&T customers who take Verizon up on its invitation to "Bring in your bill from AT&T or T-Mobile.  We'll give you a better deal."

20.     Verizon's Better Deal Campaign is false and misleading.  Many T-Mobile or AT&T consumers who go through the trouble of bringing a qualifying bill to Verizon are not offered a lower-priced comparable plan. Instead, these consumers are told that Verizon cannot match their current price, or they are offered a lower-tier plan that requires them to sacrifice features they already have.

21.     On information and belief, Verizon knows or should know—based on its own pricing structure, its sales representatives' in-store experience, and the consumer complaints posted to its own social media platforms from the inception of the Better Value Campaign—that for many consumers who bring in a qualifying bill, Verizon cannot offer a lower-priced comparable plan. Verizon's continuation of the Better Value Campaign despite this knowledge constitutes willful and intentional false and misleading advertising.

22.    Customer comments posted to Verizon's Facebook page from the inception of the Better Deal Campaign demonstrate the literal falsity of Verizon's advertising.  These firsthand accounts document a pattern of broken promises:

   a.    Comments on an October 1, 2025 video post with the caption "Bring your AT&T or T-Mobile bill to a Verizon store for a better deal" include: "I just switched to T-Mobile and I did a comparison from Verizon. Verizon was going to be at least $40 a month and that's even with the healthcare professional discount that T-Mobile doesn't offer"; "I have been and Verizon told me I had a better deal with TMobile"; and "Did that, went back to tmobile, better pricing. 160 for 1 phone line and an already paid off phone, just basic service (the standard one with Verizon, nope I went back home to T-Mobile[)]."[1]

   b.    Comments to an October 2, 2025 video post with the caption "Bring your AT&T or T-Mobile bill to a Verizon store for a better deal" include:  "I did and Verizon couldn't beat it….so what do I win?"; "we have T mobile and Verizon said they couldn't beat it."; and "I did and Verizon couldn't even match it. Went with T mobile."[2]

23.    On information and belief, shortly after these early posts Verizon disabled the comment functionality for future posts in its Better Deal Campaign.  For example, an October 6, 2025 video with the caption "Bring your AT&T or T-Mobile bill to a Verizon store for a better

---

[1]    www.facebook.com/verizon/posts/bring-your-att-or-t-mobile-bill-to-a-verizon-store-for-a-better-deal/829284302819725/.

[2]    www.facebook.com/Verizon/videos/733455983064330/.

deal," has no comments despite having 1.6 million views.[3]  A more recent January 30, 2026 video post with the caption "Take Verizon for a spin. Get a better deal today" similarly has no comments despite having over 35 million views.[4]

24.    Consumer frustration with Verizon's Better Deal Campaign extends beyond Verizon's own platforms. On the Reddit page "/r/Verizon," which has over 199,000 weekly visitors and provides a platform for virtual "discussion of all things Verizon."  Customer posts include:

   a.   "Stayed on the phone for about an hour as the [Verizon] rep worked through everything," until the representative told the user that Verizon could not offer a better price than their T-Mobile plan, and in fact at lowest could offer a price $56 per month more expensive than T-Mobile. The user wrote further, "Why do they advertise something they can't even come close to doing?"[5]

   b.   "I went into a Verizon store yesterday with my T-Mobile bill 3 lines on Magenta Max for $144. The guy said he could do it but only if I switch to the lowest tier Unlimited Welcome plan and then I would still be paying $130/month he said. I noped out of there fast."[6]

   c.   "We currently pay $256 for 8 lines at T-Mobile (Magenta Amplified). Verizon quoted me $275 for 8 lines for their unlimited ultimate plan after I uploaded my bill. This is assuming we all BYOD and do not get new phones. However, taxes

---

[3]    www.facebook.com/verizon/videos/1474310547164347/.

[4]    www.facebook.com/verizon/videos/1539860567116648/.

[5]    https://www.reddit.com/r/verizon/comments/1o0p859/verizon_plan_match_fail/.

[6]    https://www.reddit.com/r/verizon/comments/1o0p859/comment/nico4b2/.

and fees are steep too. So $275+taxes and fees will be around $340. We would also be losing free Netflix with ads and free Apple TV+ from T-Mobile. So the whole bring your T-Mobile bill promotion might not be the best price-wise."[7]

## COUNT ONE
### (False Advertising in Violation of the Lanham Act, 15 U.S.C. § 1125(a))

25.     T-Mobile incorporates all factual allegations made above as if fully set forth herein.

26.     Verizon, in connection with its wireless network services, used in commerce false and/or misleading representations of fact which misrepresented the nature, characteristics, and qualities of both T-Mobile's and Verizon's goods, services, and commercial activities in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

27.     Verizon's false descriptions or representations of fact were made in commercial advertising in a manner material to the public's decision to purchase such products.

28.     Verizon's false representations have denigrated T-Mobile and irreparably harmed its commercial interest in both reputation and sales.

29.     There is no adequate remedy at law for Verizon's misconduct and T-Mobile will continue to suffer irreparable injury until Verizon is permanently enjoined by this Court pursuant to 15 U.S.C. § 1116.

30.     Verizon will continue to unfairly profit from sales based on consumer reliance on Verizon's false and deceptive advertising comparing the nature, qualities, and characteristics of the parties' goods and services.

31.     Under 15 U.S.C. § 1117, T-Mobile is entitled to recover actual damages in an amount to be determined at trial, Verizon's profits from its false and deceptive advertising, and all

---

[7]        https://www.reddit.com/r/verizon/comments/1olwlk6/comment/nmm6pgo/.

costs and attorneys' fees incurred by T-Mobile in this action.

**COUNT TWO**
**(Deceptive and Unfair Trade Practices under the New York Business Law)**

32.    T-Mobile incorporates all factual allegations made above as if fully set forth herein.

33.    Verizon's willful and intentional false advertising and deceptive trade practices were directed towards consumers with the aim of influencing consumers to make purchasing and product decisions based on the false advertising and deceptive trade practices.

34.    By promising lower prices relative to its competitors, Verizon intentionally and willfully made false claims that were material to consumers' purchasing and product decisions.

35.    Verizon's false and deceptive advertising campaign has caused and will continue to cause harm to the consuming public by deceiving them as to the price of wireless services.

36.    The foregoing acts constitute deceptive trade practices and false advertising under New York General Business Law §§ 349 and 350.

37.    T-Mobile has been injured and will continue to be injured as a result of Verizon's false advertising and deceptive trade practices in the form of lost customers and lost sales, damage to its reputation and market position, and erosion of its goodwill.

**PRAYER FOR RELIEF**

WHEREFORE, T-Mobile demands judgment against Verizon for the following relief:

(i)    A judgment declaring that Verizon has:

(a) Violated Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a); and

(b) Engaged in deceptive trade practices and false advertising in violation of §§ 349 and 350 of the New York General Business Law.

(ii)    Preliminary and/or permanent injunctive relief enjoining Verizon, its agents, servants, officers, employees and all those acting under its control and in concert with it or on its behalf from disseminating the false and deceptive advertising claims as set forth herein in any form

or medium pursuant to 15 U.S.C. § 1116.

(iii)     An Order directing Verizon to account to T-Mobile for all gains, profits and advantages obtained by it as a result of the false advertising campaign and unfair competition and awarding T-Mobile all restitution in the amount of all such unlawful gains.

(iv)     An Order awarding to T-Mobile all actual damages resulting from Verizon's unlawful conduct in an amount to be determined at trial and increased and enhanced in this Court's discretion pursuant to 15 U.S.C. § 1117.

(v)     An Order awarding profits attributable to Verizon's willful and unlawful conduct in an amount to be determined at trial and trebled under 15 U.S.C. § 1117, and a finding that this is an exceptional case due to the intentional nature of Verizon's false advertising and awarding attorneys' fees, costs and expenses to T-Mobile, in this Court's discretion.

(vi)     An Order requiring Verizon to pay T-Mobile's costs, attorneys' fees and expenses and damages under New York General Business Law §§ 349 and 350.

(vii)     Awarding such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMANDED

T-Mobile hereby demands, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, a trial by jury in this action.


Dated:   New York, New York
         February 27, 2026

                                        */s Norman C. Simon*
                                        Norman C. Simon
                                        Boaz I. Cohen
                                        Herbert Smith Freehills Kramer (US) LLP
                                        1177 Avenue of the Americas
                                        New York, New York 10036
                                        (212) 715-9100

                                        *Attorneys for Defendant*
                                        *T-Mobile USA, Inc.*